**BLIMPIE INTERNATIONAL, INC., Plaintiff,**

v.

**BLIMPIE OF THE KEYS, Defendant.**

**No. 04 Civ. 7044(PKL).**

United States District Court, S.D. New York.

May 17, 2005.

Stanley A. Bowker, Anderson Kill & Olick, P.C., New York City, John F. Verhey, Seidler & McErlean, Chicago, IL, for Plaintiff Blimpie International, Inc.

Steven Rosen, New York, New York, Robert Zarco, Alejandro Brito, Zarco Einhorn & Salkowski, P.A., Miami, Florida, for Defendant Blimpie of the Keys.

*MEMORANDUM ORDER*

LEISURE, District Judge.

Plaintiff Blimpie International, Inc. ("Blimpie International") brings this action against one of its sub-franchisors, Blimpie of the Keys, to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, and for a declaratory judgment pursuant to 28 U.S.C. § 2201. In July 2004, Blimpie of the Keys, together with forty-four other sub-franchisors of Blimpie International, filed a consolidated demand for arbitration with the American Arbitration Association in New York against Blimpie International, alleging, *inter alia*, breach of contract and mis-

representation with respect to Blimpie International's sub-franchise agreement. Blimpie International seeks an order and declaration providing that Blimpie of the Keys must arbitrate its claims against Blimpie International on an individual basis, and not on a consolidated basis with any other parties. Presently, the Court considers two competing motions submitted by the parties. Blimpie of the Keys petitions the Court to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Meanwhile, Blimpie International has filed a motion to compel arbitration under the FAA and for declaratory relief under 28 U.S.C. § 2201, seeking, in effect, a judgment on the pleadings. For the reasons that follow, defendant's motion to dismiss is granted, and plaintiff's motion to compel arbitration and for declaratory judgment is denied as moot.

## BACKGROUND

Blimpie International is a national franchisor of restaurants specializing in the sale of submarine sandwiches and related food and drink items. (Complaint ("Compl.") at ¶ 2.) In addition to selling franchises for the operation of individual Blimpie restaurants, Blimpie International also sells sub-franchises, which give the purchaser, known as the sub-franchisor, the exclusive rights to sell and service individual Blimpie restaurant franchises in a particular geographic territory. (Id. at ¶ 6.) The sub-franchisor pays Blimpie International an initial sub-franchise fee for these exclusive rights and is obligated under its sub-franchise agreement to develop a minimum number of Blimpie restaurants in its territory each year and to provide operational service and support to existing Blimpie restaurants in its territory. (Id.) In return, the sub-franchisor is entitled to a fee upon the sale of each Blimpie restaurant in its territory, as well as a share of the monthly revenue-based royalty fee paid by the franchisees in its territory to Blimpie International. (Id.)

In July 1995, Blimpie of the Keys entered into a written sub-franchise agreement with Blimpie International (the "Agreement") pursuant to which Blimpie of the Keys was granted the exclusive right to develop Blimpie restaurants in Monroe County, Florida. (Id. at ¶ 7.) The Agreement contains an arbitration provision, which provides in substance that the parties must arbitrate any conflict or dispute that arises between them with the exception of defaults due to Blimpie of the Keys' failure to comply with its minimum store development obligations or its failure to pay for the sub-franchise rights. (Id. at ¶ 8.)

In July 2004, Blimpie of the Keys, along with forty-four other sub-franchisors of Blimpie International, filed a consolidated demand for arbitration against Blimpie International with the American Arbitration Association. In their arbitration demand, the claimants asserted breach of contract and misrepresentation, as well as a third-party beneficiary claim, based on Blimpie International's sub-franchise agreements with its sub-franchisors. As a result, Blimpie International filed the instant action in September 2004.

The Court need only address defendant's motion to dismiss because it is dispositive and renders plaintiff's motion to compel arbitration and for declaratory relief moot.

## DISCUSSION

I. *Rule 12(b)(6) Standard*

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept plaintiff's allegations as true, *see Eternity Global Master Fund Ltd. v. Morgan Guar.*

*Trust Co. of N.Y.*, 375 F.3d 168, 175 (2d Cir.2004), and construe all well-pleaded factual allegations in the complaint in plaintiff's favor. *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir.1998) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Moreover, a party is entitled to dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Plaintiff seeks to compel defendant to arbitrate its claims against plaintiff on an individual, rather than consolidated, basis. As discussed below, however, plaintiff has failed to state a claim upon which relief can be granted because this is a question for an arbitrator, not the Court, to decide.

## II. *An Arbitrator Should Decide the Issue of Consolidation*

It should be noted at the outset that the parties do not dispute the validity of the arbitration provision or its applicability to defendant's underlying claims. The instant motions concern only whether the arbitration provision permits consolidation with other arbitration proceedings and who, the Court or the arbitrator, should resolve that issue. The arbitration provision, which is paragraph 19 of the Agreement, reads in pertinent part:

> In the event there exists a conflict or dispute between the FRANCHISOR [Blimpie International] and SUBFRANCHISOR [Blimpie of the Keys], they agree to submit the conflict or dispute to the American Arbitration Association in

New York, New York, whose decision shall be final ... FRANCHISOR and SUBFRANCHISOR agree ... that the enforcement of this arbitration provision and the confirmation of any award issued to either party ... shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

(Compl., Ex. A at 13.)

Defendant argues, *inter alia*, that the Supreme Court's decision in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), mandates dismissal of plaintiff's complaint with prejudice. (*See* Defendant's Memorandum of Law In Support of Motion to Dismiss Plaintiff's Complaint with Prejudice ("Def.Mem.") at 4–6.) In *Green Tree*, the Supreme Court held that whether an arbitration provision permitted class arbitration was a question of contract interpretation to be decided by the arbitrator, rather than the judge. *Green Tree*, 539 U.S. at 451–52, 123 S.Ct. 2402. The arbitration provision at issue provided, *inter alia*, that "all disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract" shall be submitted to arbitration. *Id.* at 448, 123 S.Ct. 2402. The Court reasoned that such a broad provision revealed the parties' intent to have the arbitrator decide "what the arbitration contract in each case means (*i.e.*, whether it forbids the use of class arbitration procedures)." *Id.* at 452, 123 S.Ct. 2402. Moreover, the Court noted that any doubt regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

However, the Court recognized that there are "limited circumstances" where it should be assumed that the parties intended courts, not arbitrators, to decide certain

"gateway matters." *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). These gateway matters include whether the parties have a valid arbitration agreement and whether a concededly binding arbitration clause applies to the claim at issue. *Id.*; *see also AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (finding that whether a claim arising from a labor-management layoff controversy falls within the scope of an arbitration clause is a matter for the court); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that the court should decide whether an arbitration agreement survives a corporate merger). Nonetheless, this is a "narrow exception" that covers questions relating to whether the parties agreed to arbitrate a matter; it does not encompass questions concerning the *"kind of arbitration proceeding* the parties agreed to." *Green Tree,* 539 U.S. at 452, 123 S.Ct. 2402. " 'Thus procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator to decide." *Howsam,* 537 U.S. at 84, 123 S.Ct. 588 (quoting *John Wiley,* 376 U.S. at 557, 84 S.Ct. 909).

Plaintiff argues that *Green Tree* is distinguishable in "two crucial respects." (Plaintiff's Memorandum of Law In Opposition to Defendant's Motion To Dismiss ("Pl.Mem.") at 3.) The first notable difference argued by plaintiff is that, unlike in *Green Tree,* the parties here expressly agreed that issues relating to the enforcement of the agreement were for a court, not an arbitrator, to decide. (*Id.*) Plaintiff bases this assertion on the fact that the arbitration provision provides that "the enforcement of this arbitration provision ... shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,"* and that Section 4 of the FAA states that a court shall direct the parties to proceed to arbitration in accordance with the arbitration agreement when there has been a showing that a party has failed or refused to arbitrate as provided for in the arbitration agreement. (*Id.* at 4 (citing 9 U.S.C. § 4).)

The Court is not persuaded by this prong of plaintiff's argument. First, plaintiff ignores the fact that the arbitration provision in *Green Tree* similarly provided that it would be "governed by the Federal Arbitration Act at 9 USC section 1." *Green Tree,* 539 U.S. at 448, 123 S.Ct. 2402. This is a clause commonly found in arbitration provisions, and the Court is unwilling to conclude that the parties' use of the term "enforcement" here or their carving out of two substantive issues from arbitration evidences their intent to refer "substantive" disputes to the arbitrator and "procedural" disputes to the Court.[1] (*See* Pl. Mem. at 4.) Moreover, the arbitration provision here is not "substantially narrower" than the provision at issue in *Green Tree.* (*Id.*)

---

1. Plaintiff also cites *Richard C. Young & Co., Ltd. v. Leventhal,* 298 F.Supp.2d 160 (D.Mass. 2003), for the proposition that *Green Tree* does not preclude a district court from enforcing the procedural aspects of an arbitration agreement under the FAA. (*See* Pl. Mem. at 6–8.) While not controlling authority, *Leventhal* is also readily distinguishable from the instant matter. Relying in part upon the Second Circuit's decision *Bear Stearns & Co., Inc. v. Bennett,* 938 F.2d 31, 32 (2d Cir.1991), the district court in *Leventhal* held that the court, rather than the arbitrator, should interpret a forum-selection clause contained within an arbitration provision because such clauses have traditionally been considered by the courts and such consideration does not run afoul of *Green Tree's* instruction that courts should not address questions of arbitration procedure. *Leventhal,* 298 F.Supp.2d at 167–8. Assuming *arguendo* that the Court agrees with this reasoning, it is limited to forum selection clauses and does not apply to the issue of consolidation.

A plain reading of the pertinent language of this arbitration provision—"[i]n the event there exists a conflict or dispute between the FRANCHISOR and SUB-FRANCHISOR"—demonstrates that it is at least as broad as the provision in *Green Tree*—"[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract." Thus, plaintiff's attempt to distinguish *Green Tree* in this regard and to expand the reach of the Court by creating a substantive-procedural distinction finds no support in the text of the Agreement.

Plaintiff also tries to distinguish *Green Tree* by claiming that this case triggers questions of arbitrability, which remain within the province of the courts following *Green Tree*. (*Id.* at 8.) Specifically, plaintiff contends that the complaint here raises questions about (1) the proper parties to the arbitration proceeding and (2) the proper scope of arbitrable issues under the arbitration provision. (*Id.* at 9.) According to plaintiff, defendant's effort to arbitrate on a consolidated basis raises the question of whether the other sub-franchisors and their claims may be properly included in an arbitration proceeding arising under the Agreement between plaintiff and defendant. (*Id.*)

Plaintiff is correct to the extent that questions of arbitrability continue to be " 'issue[s] for judicial determination unless the parties clearly and unmistakably provide otherwise.' " *Howsam*, 537 U.S. at 83, 123 S.Ct. 588 (quoting *AT & T Techs.*, 475 U.S. at 649, 106 S.Ct. 1415). However, the remainder of plaintiff's argument is unavailing. Plaintiff's complaint seeks an order compelling defendant to arbitrate its claims on an individual basis. By seeking this type of relief, plaintiff concedes that the arbitration provision agreed to by the parties is valid and that defendant's under-

lying claims fall within its scope. Clearly, defendant, in initiating the arbitration proceeding, agrees with plaintiff in this regard, and the Court can find no reason to challenge this determination. The Court will not allow plaintiff to have it both ways as it now seeks to cast doubt on arbitrability, which serves as a necessary predicate for its original claim for relief.

Moreover, despite plaintiff's contentions, the question of consolidation does not affect an analysis of the validity or scope of this arbitration provision. The two inquiries are separate and distinct. Whether an arbitration proceeding should be consolidated with one or more other arbitration proceedings is a question that can be resolved only after it is determined that arbitration between two particular parties is proper. Furthermore, as discussed below, it is a question properly addressed by the arbitrator. *See Tarulli v. Circuit City Stores, Inc.*, 333 F.Supp.2d 151, 158 (S.D.N.Y.2004) ("The Supreme Court has held that once a district court determines that the arbitration agreement is valid and the parties have agreed to arbitrate, the arbitrator should determine the meaning of specific provisions of the arbitration agreement at issue.") (citing *Howsam*, 537 U.S. at 84, 123 S.Ct. 588).

Thus, the Court rejects the second prong of plaintiff's argument as well, and finds that *Green Tree* is controlling here. Consolidation does not fall within the "narrow exception" reserved for gateway matters that the parties would likely have expected a court to resolve. *See Green Tree*, 539 U.S. at 452, 123 S.Ct. 2402. Like the question of class arbitration in *Green Tree*, the question of consolidated arbitration here concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate. *Id.* Indeed, consolidation is a procedural issue, "which grow[s] out of the [parties'] dis-

pute," and therefore, presumptively falls to the arbitrator. *Howsam,* 537 U.S. at 84, 123 S.Ct. 588. And, as the Supreme Court reasoned in *Green Tree,* whether a particular procedural device is permissible in the absence of any language in the agreement is a question of "contract interpretation and arbitration procedures," which "[a]rbitrators are well situated to answer." *Green Tree,* 539 U.S. at 453, 123 S.Ct. 2402. Accordingly, in light of *Green Tree* and its progeny and the breadth of the arbitration provision here, the Court finds that the question of whether the parties' arbitration proceeding may be consolidated with other arbitration proceedings should be decided by an arbitrator.[2]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss pursuant to Rule 12(b)(6) is hereby GRANTED, and plaintiff's complaint is dismissed with prejudice in its entirety. Moreover, plaintiff's motion to compel arbitration and for declaratory relief is DENIED as moot.

**SO ORDERED.**

---

**2.** Because the Court finds *Green Tree* controlling, it need not address defendant's remaining arguments regarding consolidation. (*See* Def. Mem. at 7–10.)